IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

PHILLIP THOMAS                                                                                    PLAINTIFF

v.                                              5:08CV00287-WRW

UNION PACIFIC RAILROAD COMPANY                                                 DEFENDANT

## ORDER

Pending is Defendant's Motion for Partial Summary Judgment (Doc. No. 78). Plaintiff has responded,[1] Defendant has replied,[2] and Plaintiff filed a sur-reply.[3] For the reasons set out below, Defendant's Motion is GRANTED.

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[4] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[5]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment

---

[1]Doc. No. 82.

[2]Doc. No. 85.

[3]Doc. No. 88.

[4]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

1

beyond controversy.⁶ Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.⁷ I must view the facts in the light most favorable to the party opposing the motion.⁸ The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.⁹

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.¹⁰

Summary judgment under the Federal Employee's Liability Act¹¹ ("FELA") is not favored.¹²

## II. BACKGROUND

---

⁶*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

⁷*Id.* at 728.

⁸*Id.* at 727-28.

⁹*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

¹⁰*Anderson*, 477 U.S. at 248.

¹¹45 U.S.C. § 51, *et seq.*

¹²*Bailey v. Cent. Vt. Ry., Inc.*, 319 U.S. 350, 354 (1943).

Plaintiff, a brakeman, has worked for Defendant, a railroad company, since December 2, 2002.[13] Plaintiff alleges that he developed bilateral carpal tunnel syndrome and cubital tunnel syndrome in his right elbow as a result of his work.[14]

On September 28, 2007, Plaintiff filed this lawsuit alleging that Defendant violated the FELA.[15] Plaintiff also alleged aggravation of preexisting injuries, illnesses, and physical defects, and claimed that Defendant violated the Locomotive Inspection Act[16] ("LIA").[17] Plaintiff asserts Defendant violated the LIA "by failing to provide Plaintiffs with locomotives and their appurtenances which were in a proper and safe condition, and safe to work on or about, in that the locomotives and appurtenances caused, transferred, and/or generated excessive and/or harmful ergonomic risk factors."[18] The Complaint does not specify on which locomotive(s) Plaintiff allegedly sustained his injuries, or what the alleged ergonomic risk factors were.

Defendant filed its Motion for Partial Summary Judgment, asserting that Plaintiff's aggravation and LIA claims should be dismissed.

## III. DISCUSSION

---

[13]Doc. No. 79, 83.

[14]*Id*.

[15]Doc. No. 1.

[16]49 U.S.C. § 20701, *et seq*.

[17]*Id*.

[18]*Id*.

3

A.    Aggravation

Defendant asserts that aggravation is not a proper independent cause of action in this case.[19] Plaintiff responded that he "did not intend to allege of [sic] aggravation as a separate cause of action and will withdraw aggravation as a separate count."[20] Accordingly, Defendant's Motion on this issue is GRANTED. Plaintiff will, however, be allowed to pursue aggravation as it relates to damages.

B.    Locomotive Inspection Act

The purpose of the LIA is to protect railroad employees by imposing upon railroads "an absolute and continuing duty" to provide safe equipment.[21] Under the LIA, "[a] railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances are (1) in proper condition and safe to operate without unnecessary danger of personal injury; (2) have been inspected as required under this chapter . . . and regulations prescribed by the Secretary of Transportation under this chapter . . . ; and (3) can withstand every test prescribed by the Secretary under this chapter . . . ."[22] It follows that to establish a violation of the LIA, a plaintiff must show that a locomotive (or its parts and appurtenances) was either defective or not in proper condition and safe to operate without unnecessary danger or personal injury, and that the unsafe condition caused plaintiff's injury.

---

[19]Doc. No. 80.

[20]Doc. No. 84.

[21]*Urie v Thompson*, 337 U.S. 163, 188 (1949).

[22]49 U.S.C. § 20701.

Plaintiff's evidence that Defendant's locomotives are not in proper condition and safe to operate comes in the form of a complaint Defendant filed against General Electric ("GE") seeking indemnity for allegedly defective locomotives,[23] and in rough ride reports.[24] Defendant asserts that its complaint against GE is inadmissible.[25] Without reaching that issue, I find the complaint irrelevant. The complaint alleged that specific locomotives had specific mechanical issues.[26] The complaint was filed in 1990, and all mechanical issues with the locomotives were resolved before Defendant hired Plaintiff in December, 2002.[27] Nothing in the record suggests Plaintiff ever worked on the locomotives identified in the complaint.

Nothing in the record suggests that Plaintiff worked on the trains identified in the rough ride reports, either. The rough ride reports show, among other information, "engineer defects from Jan 1998 to Dec 2000."[28] The reports identify the specific trains reported as rough rides.[29] The reports identify rough rides only through the end of December, 2000 -- two years before

---

[23]Doc. No. 84, Exhibit E.

[24]Doc No. 84, Exhibit A-1.

[25]Doc. No. 85.

[26]For example, the complaint identified the alleged defect in locomotive engine number 4829 as "the suspension systems and operator's compartment were inadequate and caused a rough ride for the locomotive crew." Doc. No. 84, Exhibit E.

[27]Doc. No. 85, Exhibit 2.

[28]Doc. No. 84, Exhibit A1.

[29]*Id*.

Plaintiff was hired.[30] Further, the reports identify the train number of the reported rough ride.[31] The Total and Average on Duty Time report for Plaintiff shows, by train number, on which train Plaintiff worked on a particular day.[32] Plaintiff has worked on many different trains.[33] A comparison of rough ride and Duty Time reports seems to show that Plaintiff did not work on the trains noted as rough rides.

The rough ride reports show that some of Defendant's trains were reported as rough rides, but that does not make Plaintiff's case -- there can be no causation if Plaintiff did not work on the allegedly defective trains. Plaintiff has produced no evidence that he worked on trains that were defective, not in proper condition, or unsafe to operate. Further, Plaintiff does not limit his allegation to any certain train or trains, but includes the gambit of trains on which he worked from the time Defendant hired him in 2002. The Court is not aware of any case in which an LIA claim succeeded where the Plaintiff identified neither the specific train or trains that were allegedly defective or unsafe, nor the specific defect or unsafe condition (icing, a too-loud horn, *etc*.). Accordingly, Defendant's Motion on Plaintiff's LIA claim is GRANTED.

---

[30]Doc. No. 85. Exhibit 1.

[31]Doc. No. 84, Exhibit A1.

[32]Doc. No. 84, Exhibit F.

[33]*Id*.

## CONCLUSION

Based on the findings of fact and conclusions of law above, there is no genuine issue of material fact on which Plaintiff's LIA claim should proceed to trial. Accordingly, Defendant's Motion for Partial Summary Judgment (Doc. No. 78) is GRANTED.

IT IS SO ORDERED this 12th day of January, 2010.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE